Filed 12/29/23  P. v. Salcido CA4/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E080067 |
| v. | (Super. Ct. No. SWF2007094) |
| RAY AUGUSTINE SALCIDO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Samuel Diaz, Jr., Judge.

Affirmed.

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier, Paige B. Hazard, Kathryn Kirschbaum and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

In July 2021, defendant and appellant Roy Augustine Salcido pled guilty to two domestic violence counts under a negotiated plea agreement for a suspended upper-term, four-year sentence and a grant of probation. On the day he was supposed to appear for sentencing, however, defendant did not appear. Not long afterward, defendant was charged with murder, and he was later convicted of the offense. In October 2022, the trial court simultaneously sentenced him for the murder and domestic violence charges, which included an upper term of four years for one count of domestic violence.

Defendant contends Senate Bill No. 567 (SB 567) changed the applicable sentencing law, the changes apply to him, and the trial court could not have imposed the agreed-on upper-term sentence for the domestic violence charges under those changes without making additional factual findings that the court did not make. We affirm.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2020, the Riverside County District Attorney's Office filed a complaint charging defendant with willfully and unlawfully inflicting corporal injury resulting in a traumatic condition upon his spouse, former spouse, cohabitant, or parent of his child (Pen. Code, § 273.5, subd. (a); counts 1 & 2).[1] The complaint also alleged that defendant had a prior strike conviction (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)).

---

[1] All further statutory references are to the Penal Code.

In July 2021, defendant pled guilty to count 1 pursuant to a negotiated plea agreement. The plea required the trial court to impose an upper term sentence of four years, suspend execution of the sentence, and grant defendant three years of formal probation with 220 days of work release or house arrest. Defendant waived time for the sentencing hearing and the sentencing was continued to September 2021. Defendant failed to appear and a bench warrant was issued.

In October 2021, defendant was located placed in custody on suspicion of having committed murder. The sentencing proceedings on defendant's domestic violence charges were repeatedly continued while defendant went to trial on the murder charge. Defendant was later convicted of first-degree murder with a deadly weapon enhancement.

In a bifurcated proceeding in this case, the trial court found true that defendant was on bail or parole at the time of that offense for a robbery conviction. The court also sustained a serious prior felony enhancement and a strike prior enhancement for the robbery conviction.

In October 2022, the trial court sentenced defendant for the murder and domestic violence charges. He was sentenced to 50 years to life in state prison plus eight years determinate for the murder charge. As for the domestic violence charges, the trial court denied probation and found that a crime (the murder) disqualified defendant from a county jail sentence. The court then imposed the upper term of four years to run consecutive to the murder sentence. Count 2 was dismissed in the interests of justice and a prior strike allegation was dismissed pursuant to the negotiated plea.

## DISCUSSION

Defendant's sole argument is that SB 567, which amended section 1170, subdivision (b), applies to his domestic violence sentence, so the court was required to impose the middle term unless it made certain findings, which it did not make. The People acknowledge it is unclear whether the trial court recognized that the then-recent amendments to section 1170, subdivision (b), imposed by SB 567 applied to defendant's stipulated sentence. The People agree SB 567's changes apply to defendant, whose case was not yet final when he pled guilty in July 2021 and was sentenced in October 2022. But they argue the trial court had no option other than imposing an upper-term sentence pursuant to defendant's stipulated plea agreement. Thus, the People contend that if the trial court erred in failing to apply the amended version of section 1170, subdivision (b) when approving defendant's plea deal and sentencing him to the upper term, the error was harmless beyond a reasonable doubt. We agree any error was harmless and affirm on that basis.

SB 567, which went into effect in January 2022, amended section 1170, subdivision (b) to make the middle term the presumptive sentence for a term of imprisonment unless certain circumstances exist. (See Stats. 2021, ch. 731, § 1.3, adding § 1170, subd. (b)(1), (2).) Under amended section 1170, subdivision (b), the trial court may impose an upper-term sentence only where there are circumstances in aggravation,

and the facts underlying all of the aggravating circumstances have been stipulated by the defendant or found true beyond a reasonable doubt by a jury or court trial. (*Ibid*.)

The Courts of Appeal are currently split on whether SB 567's amendments apply to a negotiated sentence. The case the People rely on, *People v. Mitchell* (2022) 83 Cal.App.5th 1051 (*Mitchell*), review granted December 14, 2022, S277314,[2] holds that the amendments to section 1170, subdivision (b) enacted by SB 567 do not apply to a stipulated sentence. Another court has since followed *Mitchell*. (*People v. Sallee* (2023) 88 Cal.App.5th 330, 338-339.) However, *People v. Todd* (2023) 88 Cal.App.5th 373 (*Todd*), review granted April 26, 2023, S279154,[3] expressly disagreed with *Mitchell* and holds that SB 567's amendments to section 1170, subdivision (b) apply retroactively to a stipulated sentence. Another court has since followed *Todd* while disagreeing with *Mitchell*. (*People v. Fox* (2023) 90 Cal.App.5th 826, 833.)

We need not pick a side here. Even if defendant is correct that the amendments to section 1170, subdivision (b) enacted by SB 567 apply to his stipulated sentence and the trial court erred by failing to apply them, the error was harmless. (*People v. Berdoll* (2022) 85 Cal.App.5th 159, 161 [applying SB 567 retroactively but declining to remand because error was harmless].)

---

[2] *Mitchell* may be cited only for its persuasive value and to show that a split of authority exists. (See *People v. Mitchell* (2022) 301 Cal.Rptr.3d 812, 812-813; Cal. Rules of Court, rule 8.1115(e)(3).)

[3] *Todd* is a grant-and-hold pending our Supreme Court's resolution of *Mitchell*. (See *People v. Todd* (2023) 307 Cal.Rptr.3d 345, 345.)

Courts of Appeal, including this court, are split on how to assess harmlessness in the SB 567 context. (See *People v. Lewis* (2023) 88 Cal.App.5th 1125, 1137 (*Lewis*) [discussing various standards reviewing courts employ to review error in retroactive application of amended section 1170, subdivision (b)]; *People v. Butler* (2023) 89 Cal.App.5th 953, 960, fn. 1.) But this court and the majority of other Courts of Appeal first ask whether the sentence could be imposed constitutionally. (See *Lewis*, *supra*, at pp. 1136-1137.) At a minimum, this requires us to find that a jury would have found at least one aggravating circumstance true beyond a reasonable doubt. (See *id*. at pp. 1137.) We make that finding here.

Defendant cannot and does not dispute that he was convicted by a jury of a murder that he committed while out on bail and awaiting sentencing in this case. The trial court properly relied on a certified record of that conviction when imposing the upper term in this case and did not have to submit the issue to a jury. (§ 1170, subd. (b)(1)-(2) ["[T]he court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."].) Nor can defendant dispute that the murder was of increasing violence compared to his prior robbery conviction. Any reasonable jury would have found this aggravating circumstance true beyond a reasonable doubt, so the trial court's reliance on it was harmless. As a result, defendant's sentence is constitutional because a reasonable jury would have found at least one aggravating circumstance true beyond a reasonable doubt. (*Lewis*, *supra*, 88 Cal.App.5th at p. 1137.)

6

Courts of Appeal are also split on the next step of the harmlessness analysis. (*Lewis*, *supra*, 88 Cal.App.5th at p. 1137.) The most defendant-friendly test next asks whether the record "clearly indicates" whether the trial court would have imposed the same sentence under amended section 1170, subdivision (b). (See *ibid*.) Even under that standard, any error here was harmless because the record clearly indicates that the trial court would have imposed the upper term under amended section 1170, subdivision (b).

Although the trial court sentenced defendant according to the parties' negotiated plea, the court still explained in detail at the sentencing hearing why it was imposing an upper term for defendant's domestic violence conviction. Several aspects of court's statements clearly indicate that the trial court would still impose an upper term on remand.

The court prefaced its ruling by explaining it intended to "throw the book" at defendant. The court stated that, if defendant's conduct "doesn't call for the maximum, I don't know what conduct, what actions" would. In the court's view, the defendant was a "violent" and "very dangerous man" and the "opposite" of a "poster child . . . for imposing . . . leniency." The trial court thus expressly imposed an "[u]pper term because defendant promised to be a law-abiding citizen and show up for the court date," but he "decided to commit a heinous crime, the most heinous crime you could commit, taking someone else's life. Upper term."

The trial court's statements show that there is no chance that the defendant would receive a lighter sentence on remand because the court made clear that it intended to

7

impose the "maximum" sentence possible on defendant because, in the court's view, defendant deserved no leniency.  We therefore conclude that any error in the trial court's alleged failure to apply amended section 1170, subdivision (b) was harmless under any standard.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

MILLER
Acting P. J.

FIELDS
J.